UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ANTHONY STIGER, Plaintiff, v. MUHAMMAD, *et al.*, Defendants. | Case No. 3:23-cv-00653-MMD-CSD<br>ORDER |

## I. SUMMARY

*Pro se* Plaintiff Anthony Stiger, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), brings this civil rights action under 42 U.S.C. § 1983 to redress constitutional violations he allegedly suffered while housed at High Desert State Prison ("HDSP"). (ECF Nos. 4, 7.) The Court screened Stiger's First Amended Complaint (ECF No. 4 ("FAC")) and allowed him to proceed with failure-to-protect and excessive force claims under the Eighth Amendment. (ECF No. 7 ("Screening Order").) Stiger filed a motion for summary judgment (ECF No. 44 ("Stiger's Motion")).[1] Defendants filed a separate motion for summary judgment (ECF No. 50 ("Defendants' Motion"))[2] (collectively, "the Motions"). Before the Court is United States Magistrate Judge Craig S. Denney's Report and Recommendation (ECF No. 68 ("R&R")), to which Defendants[3], only, now timely object (ECF No. 69 ("Objection"))[4], recommending the Court deny both

[1]Defendants filed a response (ECF Nos. 45, 47 (sealed)), and Plaintiff replied (ECF No. 49).

[2]Plaintiff responded (ECF No. 52), and Defendants replied (ECF No. 53). The Court granted Plaintiff leave to file supplemental briefing (ECF Nos. 57, 58). (ECF No. 65.) Defendants filed a response to the supplemental briefing (ECF No. 67).

[3]Defendants include Bradley Bergren, Robert Jiminez, and Yasser Mohamed.

[4]Plaintiff filed a response to Defendants' Objection. (ECF No. 70.)

Stiger's Motion and Defendants' Motion. (ECF No. 68 at 1, 27.)

For the reasons discussed below, the Court will adopt the R&R's recommendation to deny the Motions based on genuine disputes of material fact. As to Defendants' Motion, in particular, the Court agrees that Defendants have not met their burden to demonstrate an absence of genuine disputes of material fact and, for reasons further explained below, the Court adopts the R&R's recommendation to deny summary judgment. As to Stiger's Motion, no objection, to date, has been filed by Stiger. As further explained below, the Court will also adopt the R&R's recommendation to deny Stiger's Motion.

## II. RELEVANT BACKGROUND

As mentioned, the Court previously screened Stiger's FAC (ECF No. 4) and found that it stated colorable failure-to-protect and excessive force claims under the Eighth Amendment.[5] (ECF No. 7.) The following facts are taken from the Court's Screening Order and adapted from the FAC.[6] (*Id.*)

Stiger was housed with cellmate Lonnie Garner at HDSP, whom prison officials allegedly knew had a history of violent psychotic episodes involving self-harm and harm of other inmates. (*Id.* at 3.) Stiger alleges that on December 24, 2022, he informed Defendant Bergren—and later Defendants Mohamed and Jiminez—that Garner was behaving erratically, threatening to harm both himself and Stiger, possessed a prison-made knife, and had injured Stiger. (*Id.* at 3-5.) On this date, Stiger also filed both informal and emergency grievances reporting the incident and citing a lack of timely response from prison officials. (ECF No. 44 at 35-37, 40.) Stiger claims that, despite these warnings, Defendants failed to properly intervene by separating the inmates or to otherwise protect

---

[5]The Court allowed the failure-to-protect claim to proceed against Defendants Yasser Mohamed (mistakenly identified by Plaintiff as "Muhammad"), Robert Jiminez (mistakenly identified by Plaintiff as "Juminez"), and Bradley Bergren (mistakenly identified by Plaintiff as "Burgen"). (ECF No. 7.) The Court allowed the excessive force claim to proceed against Defendant Jiminez. (*Id.*)

[6]The following facts are undisputed unless otherwise noted. The Court further incorporates by reference Judge Denney's description of the background of the case and recitation of pertinent allegations in the FAC, provided in the R&R. (ECF No. 68 at 1-3.)

him, leaving Stiger confined with Garner for approximately three hours while Garner assaulted him and attempted to harm himself.[7] (ECF No. 7 at 4-5.)

Stiger further alleges that, after several hours, correctional officers eventually removed Garner from the cell. (*Id.* at 5.) As Defendant Jiminez escorted Stiger back to his cell in handcuffs, Jiminez allegedly punched Stiger in the back and shoved him into the cell wall.[8] (*Id.*) Stiger claims that Jiminez then forced him upright and pushed his head into the wall, splitting Stiger's lip and loosening two teeth. (*Id.*) Declaration statements from inmates David Burnes, Lavella Anthony, and Jermaine Johnson appears to corroborate Stiger's account. (ECF No. 44 at 34, 42-43.) Stiger alleges that, as a result of these incidents, he sustained nerve damage, chronic pain, mobility impairments requiring the use of a cane, and psychological injuries, including severe anxiety and depression. (ECF No. 7 at 5-6.)

## III. DISCUSSION

Stiger moves for summary judgment on his Eighth Amendment claims, contending that the undisputed evidence establishes that: (1) Defendants Mohamed, Bergren, and Jiminez were deliberately indifferent to a substantial risk to his safety after he reported his cellmate's violent and psychotic behavior; and (2) Defendant Jiminez used excessive force against him while restrained. (ECF No. 44.) Stiger also seeks punitive damages. (*Id.*) To date, no objection has been filed by Stiger. Because there is no objection, and, as further explained below, the Court will adopt the R&R's recommendation to deny Stiger's Motion.

---

[7]Defendants by contrast, offer varying accounts of their response time, asserting that Defendants responded in "less than an hour," "an hour," or "three hours." (ECF No. 50 at 2, 13.)

[8]Defendants dispute the alleged use of force and/or any injury incurred as a result, pointing to Stiger's failure to file a medical kite or grievance regarding the incident as support. (ECF No. 50 at 10; ECF No. 69 at 10.) The Magistrate Judge notes that the FAC references a grievance filed regarding the failure-to-protect claim but not the excessive force claim. (ECF No. 68 at 22-23, 26.) Upon further review of the record, the Court notes that Stiger, indeed, filed an informal grievance on January 4, 2023 stating the following: "I was also pulled out of my cell and punched and my head was slammed against the wall by c/o Juminez." (ECF No. 52-1 at 4-5.)

Defendants, meanwhile, oppose Stiger's Motion and move for summary judgment in their favor on Stiger's claims. Defendants argue that: (1) Stiger lacks admissible evidence establishing deliberate indifference under the Eighth Amendment; (2) Defendants are entitled to qualified immunity; (3) Stiger failed to exhaust his administrative remedies as to the excessive force claim; and (4) punitive damages are improper under the circumstances. (ECF No. 50.) To avoid repetition, the Court will address the Motions as they pertain to each claim while bearing in mind the parties' burdens on summary judgment. *See* Fed. R. Civ. P. 56 (providing that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) ("The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.") (citation omitted).

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where, as here, a party timely objects to a magistrate judge's R&R, the Court must "make a *de novo* determination of those portions of the R&R to which objection is made." *Id.* The Court's review of Defendants' Motion is thus *de novo* because Defendants filed their Objection (ECF No. 69). The Court first evaluates the Motions with respect to the failure-to-protect claim and Defendants' request for qualified immunity before turning to the excessive force claim and finds that genuine disputes of material fact preclude summary judgment for either party on these claims.

**A. Failure-To-Protect Claim**

The Court first addresses the merits of Stiger's Eighth Amendment failure-to-protect claim against Defendants Mohamed, Bergren, and Jiminez and finds that a genuine factual dispute exists as to whether they acted with deliberate indifference to Stiger's safety. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) (holding that

summary judgment requires the moving party to bear the burden of showing that there are no genuine issues of material fact); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (Once the moving party satisfies Rule 56's requirements, the burden then shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial.").

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotation marks omitted). Deprivations constituting an "unnecessary and wanton inflection of pain" or denying the "minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation. *See Wilson v. Seiter,* 501 U.S. 294, 298 (1991) (citation and internal quotation marks omitted). In essence, prison officials have a duty to guarantee not only adequate food, clothing, shelter, and medical care but to also take "reasonable measures" to ensure inmate safety and "protect prisoners from violence at the hands of other prisoners." *See Farmer v. Brennan*, 511 U.S. 825, 825, 832 (1994); *see also Seiter*, 501 U.S. at 303 (describing "the protection [an inmate] is afforded against other inmates" as a "conditio[n] of confinement" subject to the strictures of the Eighth Amendment).

When a prison official is accused of imposing unsafe conditions of confinement in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment, the inquiry turns on whether the official "acted with deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). A prison official is deliberately indifferent when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind."[9] *See Farmer*, 511 U.S. at 834-35 ("[A] prison official may be held liable under the Eighth Amendment for denying humane

[9]To prevail on a conditions of confinement claim under the Eighth Amendment, a plaintiff must make both of these showings. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citing *Seiter*, 501 U.S. at 298).

conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

To satisfy the subjective prong, a plaintiff must show actual knowledge—that prison officials knew of and disregarded a risk to inmate health or safety created by the condition. *See Farmer*, 511 U.S. at 826. Here, the primary factual dispute revolves around whether Defendants Bergren, Mohamed, and Jiminez knew that Stiger faced a substantial risk of serious harm from his cellmate yet failed to respond in a timely manner. In their Motion, Defendants dispute the subjective prong, arguing they were not deliberately indifferent because they timely responded to the incident "within an hour of receiving [Stiger's] grievance" by removing Stiger's cellmate and therefore did not violate Stiger's Eighth Amendment rights. (ECF No. 50 at 2, 17-18; ECF No. 45 at 14.) Elsewhere, however, Defendants' narrative of the timeline shifts when they assert that "there was only a three-hour delay in responding to Stiger's request for his cellmate to see medical," which they contend was reasonable given that the incident occurred on Christmas Eve. (ECF No. 45 at 13.)

Stiger, by contrast, presents evidence, including sworn declarations from other inmates along with his own grievance record, that he repeatedly alerted Bergren, Mohamed, and Jiminez that his cellmate was experiencing a violent mental health episode, possessed a weapon, and posed an immediate danger to both himself and Stiger, yet the officers failed to properly intervene. (ECF No. 44 at 33, 35-36, 38-39.) According to Stiger's informal grievance statement, several hours later, at 2:00 p.m., non-defendant officers arrived and took the cellmate to medical. (*Id.* at 36.) The Court thus finds that these competing accounts create a genuine dispute of material fact regarding whether Defendants knew of, yet deliberately disregarded, a substantial risk to Stiger's safety. Accordingly, the Court denies the Motions as to the failure-to-protect claim.[10]

[10]Because the Court finds a genuine dispute of material fact as to the subjective requirement for deliberate indifference, it need not assess the objective requirement.

**B. Excessive Force Claim and Administrative Exhaustion**

The Court next turns to the merits of Stiger's Eighth Amendment excessive force claim against Defendant Jiminez and finds that a genuine factual dispute exists as to the officer conduct in question. In particular, the Court agrees with the Magistrate Judge's finding that a genuine factual dispute exists as to the alleged force used by Jiminez against Stiger, the circumstances under which it was applied, and the injuries incurred as a result. (ECF No. 68 at 23-26).

An Eighth Amendment claim of excessive force against prisoners is evaluated under the *Hudson* Court's five-factor balancing test: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *See Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003) (citing *Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992)). In evaluating a prison official's particular use of force, the core judicial inquiry turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson*, 503 U.S. at 6-7. A showing of serious injury as a result of the force applied is not required, but the lack of such injury is relevant to the inquiry. *See id.* at 7-9.

In applying the *Hudson* factors, the Magistrate Judge identifies genuine disputes of material fact in the record that preclude summary judgment. In both their Motion and Objection, Defendants, on the one hand, primarily contend that Stiger's failure to file a medical kite or grievance regarding the alleged use of force by Jiminez or any resulting injury supports the conclusion that no force was used. (ECF No. 50 at 10; ECF No. 69 at 10.) Stiger, however, points to sworn declarations from other inmates stating that they witnessed Jiminez punch Stiger and heard Jiminez recount admissions acknowledging his use of force against Stiger.[11] (*See* ECF No. 44 at 34, 42-43.) This evidence creates a

---

[11]Inmate David Burnes stated: "I saw Anthony being striped searched in the shower and on the way back to his cell I saw Officer Juminez punch him from behind

genuine dispute regarding whether Jiminez used force against Stiger and, if so, whether that force was applied in a "good faith" versus "malicious" or "sadistic" manner. The Court therefore agrees that a genuine dispute of material fact precludes summary judgment on the excessive force claim.

The parties further dispute whether Stiger properly exhausted his administrative remedies as to the excessive force claim. In their Motion, Defendants argue that Stiger failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), as to this claim. (ECF No. 50 at 7-8.) In particular, Defendants argue that while Stiger filed multiple grievances regarding the incident on December 24, 2022, he did not raise concerns of any alleged excessive force involving Jiminez and therefore failed to put NDOC on notice. (*Id.* at 7 (citing ECF No. 45-1 ("Grievance History"); ECF No. 44 at 35-40).) Viewing the record in the light most favorable to Stiger, the Court disagrees.[12]

The PLRA requires *proper* exhaustion. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) ("proper exhaustion" means "using all steps the agency holds out"); *see also Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (noting that to properly exhaust their administrative remedies under the PLRA, a plaintiff must adhere to "critical procedural rules"). The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). To exhaust administrative remedies within the NDOC,

---

while he was in handcuffs and Anthony fell." (ECF No. 44 at 34.) Inmate Lavella Anthony stated: "[Officer Jiminez] explained [to me] how he pulled the inmate [Stiger] out of his cell and got off on him (punched) a few times[.]" (*Id.* at 42.) Inmate Jermaine Johnson stated that, on the date of the incident, Officer Jiminez told him: "'I had to rough [Stiger] up because his cell mate was high and he was talking shit about me not doing my job.'" (*Id.* at 43.)

[12]"If undisputed evidence viewed in the light most favorable to the [nonmoving] prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

inmates must follow the procedures set forth in Administrative Regulation 740, and they must complete three tiered levels of a grievance: informal, first, and second review.

A prison grievance need not contain all the elements or specificity of a future legal claim to satisfy the exhaustion requirement. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). This is because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.* (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). In his opposition to Defendants' Motion, Stiger counters that he did, in fact, file an informal grievance on January 4, 2023 (ECF No. 52-1 at 4-5) as to the alleged excessive force but received no response, despite following up multiple times, adhering to internal grievance procedures, and completing all levels of review. (ECF No. 52 at 26.) In their Objection, Defendants later acknowledge Stiger's excessive force grievance but challenge its validity, contending that it was "never filed with the institution" because it "lacks a file stamp," "lacks a grievance coordinator signature," "does not appear in NOTIS," and because "Stiger possessed the original white copy." (ECF No. 69 at 7.)

Because the full grievance record is factually disputed, the Magistrate Judge recommends the Court hold a preliminary evidentiary hearing to assess whether Stiger properly exhausted his administrative remedies for his Eighth Amendment excessive force claim. (ECF No. 68 at 22-23 (citing *Albino v. Baca*, 747 F.3d 1162, 1170-71 (9th Cir. 2014)).) The Court agrees and will hold an evidentiary hearing before trial to address the administrative exhaustion issue.

**C. Qualified Immunity**

Defendants argue they are entitled to qualified immunity for Stiger's Eighth Amendment failure-to-protect and excessive force claims. (ECF No. 50 at 8-17.) Defendants contend that Stiger cannot establish an Eighth Amendment violation for deliberate indifference to inmate safety because Defendants responded adequately to the incident involving Stiger's cellmate. (*Id.* at 9, 16-17.) They further contend that they were not placed on "clear notice" that their conduct violated the Eighth Amendment. (*Id.*) Stiger

counters that Defendants are not entitled to qualified immunity because they violated clearly established Eighth Amendment law along with his rights. (ECF No. 52 at 22-24.) Stiger further argues that Defendants fail to show an absence of genuine dispute of material fact as to their lack of deliberate indifference. (*Id.* at 23.)

Qualified immunity is an "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). To determine whether qualified immunity applies, the Court must consider "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson*, 555 U.S. at 232). District courts have discretion to address these prongs in any order. *Pearson*, 555 U.S. at 236.

As to the failure-to-protect claim, Defendants have failed to meet their burden on summary judgment. Defendants' argument that Stiger failed to put prison officials on "clear notice" of a constitutional violation is unconvincing. (ECF No. 50 at 16.) Under the second prong of a qualified immunity analysis, the proper inquiry is whether a reasonable official would have understood that their actions violated Stiger's rights. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). Moreover, it is clearly established that "[d]eliberate indifference occurs when '[an] official acted *or failed to act* despite his knowledge of a substantial risk of serious harm.'" *Solis v. County of L.A.*, 514 F.3d 946, 957 (9th Cir.2008) (emphasis added) (quoting *Farmer,* 511 U.S. 825, 841 (1994)).

Here, Defendants concede that they were aware of Stiger's informal and

emergency grievances, both filed on the day of the incident. (*Id.* at 2-3 (citing ECF No. 44 at 40; ECF No. 44 at 35-37).) Moreover, Defendants' varying and inconsistent accounts of the institution's response—ranging from "less than an hour" to "an hour" to "three hours"—reflect their acknowledgment that prison officials were on notice of the incident, despite disputing the timeliness and adequacy of the response. (ECF No. 50 at 2, 13.) A reasonable jury could therefore conclude that Defendants should have, and could have, understood the substantial risk to Stiger's safety and nevertheless failed to respond in a manner consistent with clearly established Eighth Amendment obligations.

The same is true of the excessive force claim. "Objective reasonableness may inform [this] Eighth Amendment inquiry, providing evidence of good faith or of malice." *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 797 (9th Cir. 2018) (concluding that sheriff's department employees were not entitled to qualified immunity where, during a prison disturbance, they electrically shocked prisoners with stun guns for purpose of causing harm). As mentioned above, genuine disputes of material fact remain regarding whether Jiminez used force against Stiger, and, if so, in what capacity. Viewed in a light most favorable to Stiger, a reasonable jury could find that the alleged conduct likely exceeded the bounds of "objective reasonableness" and violated clearly established Eighth Amendment law. *See Hudson*, 503 U.S. at 7-10 (1992).

Viewing all evidence in the light most favorable to Stiger, the Court concludes that Defendants are not entitled to qualified immunity at the summary judgment stage because genuine disputes of material fact remain regarding whether Defendants violated Stiger's clearly established Eighth Amendment rights.

**D. Punitive Damages**

Lastly, both parties move for summary judgment as to Stiger's request for punitive damages. However, as to § 1983 claims, "[i]t is well-established that a 'jury may award punitive damages . . . either when a defendant's conduct . . . involved a reckless or callous indifference to the constitutional rights of others.'" *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993). Stiger's allegations could lead a reasonable jury to conclude that

prison officials acted with reckless or callous disregard for his health and safety in violation of the Eighth Amendment—conduct that could support an award of punitive damages. Because such an award generally requires a fact-intensive inquiry, the Court denies both parties' requests for summary judgment, as the question is one ultimately best left to a jury.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions before the Court.

It is therefore ordered that Judge Denney's report and recommendation (ECF No. 68) is adopted in full.

It is further ordered that Plaintiff's motion for summary judgment (ECF No. 44) is denied.

It is further ordered that Defendants' motion for summary judgment (ECF No. 50) is denied.

The Court refers this case to Judge Denney to conduct a settlement conference. The Court will schedule the evidentiary hearing on whether Stiger exhausted his administrative remedies for his Eighth Amendment excessive force claim after the settlement conference, assuming settlement is not effectuated. To ensure the hearing is timely scheduled, the parties are directed to file a status report within seven days from the settlement conference. The proposed joint pretrial order is due 30 days from the Court's decision on administrative exhaustion.

DATED THIS 27th Day of July 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE